## IN RE ESTATE OF BENJ. KAUFMAN ET AL.

*Liability of guardian as guardian or trustee, under written agree-
ment.*

By the terms of a written instrument a mother gave to her
    minor children a certain sum of money to be held by their
    guardian as such until they attained majority, and there-
    after as trustee until final distribution; said "guardian and
    trustee" in consideration therefor, to pay to her the interest
    on the money until the youngest child should attain ma-
    jority, after which he should pay over the money to each of
    the children; in the event of a vacancy in the guardianship
    the successor to succeed the guardian "as said trustee," and
    hold the money upon the same terms, etc., to be delivered
    "to said successor in his fiduciary capacity." These terms
    were accepted in writing by the guardian. The guardian
    loaned the money to a firm of which he was a member, and
    afterwards failed in business during the minority of all the
    children.   Before failing, he presented his resignation as
    guardian, which was accepted, and filed his account claiming
    to hold said money as trustee.   On exceptions to his account
    filed by his successor, *Held,* that, the guardian received the
    money as guardian and must account for it as such.
*Decided February* 28, 1887.

Prior to the 19th day of May, 1874, Leopold
Rosenfeld was the guardian of Samuel, Benjamin,
Milton, and Rose Kaufman, minors, duly appointed
by this court, and acted as such until recently, when

he resigned. Lottie Kaufman, the mother of these minors, being the owner in her own right of $10,000, and desiring to give $5,000 of this money to her four children, entered, on the 19th day of May, 1874, into the following agreement with Leopold Rosenfeld:

" Whereas, I, Lottie Kaufman, do now have and possess in my own absolute right the sum of $10,000, and do now possess the same subject to no provisos or conditions whatsoever. And whereas, I have and hold the same under my sole absolute control and disposition; and whereas, after due deliberation, I have concluded that it is just and meet to give and transfer $5,000 thereof to my children, Samuel Kaufman, Benj. Kaufman, Milton Kaufman, and Rosa Grace Kaufman —that is to say, to each of them $1,250; therefore, in consideration of the premises, and in further consideration of the acceptance of the said $5,000 for said children by Mr. Leopold Rosenfeld, their guardian, upon the terms hereinafter set forth, do I, Lottie Kaufman, voluntarily and of my own free will, give and transfer unto my said children $1,250 each—that is to say, in all, the sum of $5,000, upon the following terms, to-wit: That said Leopld Rosenfeld shall hold said money and have the same under his control in his office as guardian, as to the share of each of my said children, until he or she shall attain majority, and thence thereafter until the final distribution of said money, as hereinafter provided for, as

trustee for each of them, and further, that said Leopold Rosenfeld, as guardian and trustee, in consideration of this gift, shall pay and deliver to me all the profits and fruit of the said money obtained by him, by way of interest thereon, until the one of my said children which shall become of age last shall have attained majority, when said Leopold Rosenfeld shall be authorized, and is hereby authorized, to give and transfer to each of my said children, who shall then survive, his or her equal share of said sum. In the event the said guardianship of Leopold Rosenfeld be rendered vacant by any cause whatsoever, the guardian appointed in his stead shall also succeed said Rosenfeld as said trustee, and shall hold said money upon the same terms, and said Rosenfeld shall and is hereby authorized so to deliver said money to said successor in his fiduciary capacity. The gift or gifts herein made shall not be regarded as made by way of advancement to my said children. Witness my hand this 19th day of May, 1874.

"LOTTIE KAUFMAN.

"I accept the foregoing described money upon the terms and trusts aforesaid.

"LEOPOLD ROSENFELD, Guardian."

In pursuance of this agreement Rosenfeld received the $5,000 and loaned it to a firm, of which he was a member, who opened an account with him as guardian; and this continued so for some years, when he

failed in business. Previous to his failure, however, he presented his resignation as guardian, which was duly accepted, and duly filed his account as such, showing a large balance in his hands, excluding the sum of $5,000. As to this amount, he states in his account that he holds the same as trustee under the agreement. James Levy was subsequently appointed guardian for these minors, and filed exceptions to the account, and to the statement contained therein relating to this amount of $5,000, and alleges that the said Rosenfeld received said amount as guardian, and that he must account as such.

*Judge Jacob Shroder* and *B. Bettman, Jr.*, for James Levy, Guardian.

*Kramer & Kramer* and *Wilby & Wald* for sureties.

GOEBEL, J.

Rosenfeld being now insolvent, and the Supreme Court having held in the case of *Braiden* v. *Mercer*, 44 O. S. 339, that in an action upon a guardian's bond for the recovery of the amount found due the wards, upon a final settlement of the guardian's accounts in the Probate Court, the sureties are concluded by the settlement, and will not be heard, in the absence of fraud and collusion, to question its correctness or demand a rehearing of the accounts, the question involved herein becomes a matter of some importance

to his sureties, who now appear, resisting the application of the present guardian.

The first question that presents itself is, did Rosenfeld receive this money as guardian, for which he must now account and pay over, as provided by section 6269 of the Revised Statutes?  For the solution of this particular question we must look to the agreement.  By this agreement $5,000 was *absolutely given* to the four children, accepted by Rosenfeld as guardian, to be held and controlled by him in his office as guardian, as to the share of each of said minors, until he or she should attain majority.  It will be seen that this agreement is signed by him as guardian; that he treated this money as having been received by him as such, having invested it in his name as guardian; and the evidence is too conclusive to admit of any doubt that he did receive it as such.  This question being disposed of, the next question that presents itself is, could he legally, as guardian, enter into such an agreement?  I think he could.  As guardian it was his duty to receive any and all moneys coming to his ward from any and all sources.  If it became necessary, in the receipt of money, to make an agreement with the donor, by which this fund should be held in trust for his wards; but to pay the interest and profits to the donor, then so much of that agreement as relates to the payment of the income and profits was made as trustee and

not as guardian, and such agreement being separable from the exercise of his power to receive, can not militate against that power; and he must account in the capacity in which he received it. By this agreement he is to hold the respective shares of the minors until the youngest shall become of age, and in the meanwhile as well as during their minority to pay the income to the mother. As the guardianship is co-extensive only with the minority of the ward, it must follow, from the agreement, that he held such share or shares after the termination of the guardianship, as trustee.

In the case at bar there were two funds, one the principal and the other the income and profits arising from the principal; the former went to the children, the latter to the mother. The relationship of Rosenfeld to the former was that of guardian, to the latter that of trustee.

Counsel have cited *Quinby* v. *Walker*, 14 O. S. 193. The principle there determined is, that an administrator can not treat as to property unless it came into his hands as administrator, and is assets in his hands, belonging to the estate. In the particular case the bonds were not received by Scott in the discharge of his duties as administrator, but came to him by virtue of an agreement of the widow and heirs on the one hand and the purchaser on the other, and he became trustee. The converse of this must be equally true,

that if the property was assets of the estate, notwithstanding the agreement, he would hold such assets as administrator and be liable as such. Apply this principle to the case at bar, and we find that this money was the absolute property of these children, which could not have gone into any other hands but the guardian's. That being the legal status of the parties, the agreement did neither contract nor enlarge the powers conferred by law.

· I am also cited to the case of *Hindman* v. *State of Maryland*, 61 Md. 471. The controlling question in that case was whether an executor, under a will, in · respect to a legacy of four hundred dollars bequeathed to a minor, to be paid to him on his attaining the age of twenty-one years, the interest in the meantime to be paid to two other parties, could legally pay the corpus to a guardian, for which, in default of payment by such guardian, his bondsmen would be liable; and it was held that no special direction being given by the testator as to who should invest the fund, it was the plain duty of the executors and no one else. It followed by necessary implication, as one of the duties of their office, and they could not divest themselves of it while holding their respective relations to the estate, and the executors not having power to shift their responsibility, or to transfer this fund upon the same trusts, and the guardian not having power to receive it, his sureties would

Estate of Kaufman.

not be liable for his default.    But it does not follow that if the testator had imposed upon the guardian this power, or had failed to bequeath the interest, and such executor should have paid the corpus to the guardian, that the sureties would not be liable on the bond of such guardian; and this view is strengthened by the case of *Gunther and Canfield* v. *The State of Maryland*, 31 Md. 21.    In that case the legacy was to be paid to the legatee in case he attained the age of twenty-one years.    In the meantime the interest was not bequeathed, and the executor having paid such legacy to the guardian, and the guardian having defaulted, the court held that the payment to the guardian was legal.

From these cases it must also follow that a guardian may hold the corpus as guardian and become trustee as to the interest.    These children being still minors, and their estate being still under the control and direction of this court, and the court having found that the guardian duly received the money as such, an order will now be made directing said Leopold Rosenfeld to account, as the late guardian, for said sum of $5,000, and ordering him to pay the same to the present guardian.

NOTE.— The judgment in this case was reversed by the Hamilton Common Pleas and affirmed by the Circuit Court, First Circuit, No. 602. *In re* estate Benjamin Kaufman *et al*,, unreported.