RICHARD WOOTTEN AND
THOMAS WOOTTEN
vs.
WILLIAM N. BURCH, ADM'R,
C. T. A. OF WILLIAM G. JACKSON,
DECEASED ET AL.

MARCH TERM, 1851.

[INSUFFICIENT ANSWER—CHANCERY PRACTICE—LEGACY OVER OF MONEY AND OTHER PERSONAL PROPERTY, AFTER A LIFE ESTATE—DUTY AND LIABILITY OF EXECUTORS—INCREASE OF NEGRO SLAVES.]

It is not sufficient, that an answer contains a general denial of the matters charged in the bill, but there must be an answer to the sifting inquiries upon the general subject : and, wherever there are particular and precise charges, they must be answered particularly and precisely, though the general answer may amount to a full denial of the charges.

The answer should, in general, be full to all the interrogatories founded on the matters charged in the bill, unless they are clearly immaterial : and some writers say, that the general rule requires the defendant to answer every question, without reference to whether it is or is not material ; and that the court will take care that it shall not be applied in such a way as to be oppressive to the parties.

This rule must, of course, be subject to the qualification, that the matters inquired about, are not purely scandalous, or which would subject the defendant to a penalty, forfeiture or punishment; for all such matters, he is not required to answer.

Where the complainants, by their bill, asserted their title under the will of a testator, and claimed relief accordingly ; and, likewise, stated every fact necessary to enable them to recover as his personal representatives. It was HELD—

That, under the prayer for general relief, they were entitled to recover, as the personal representatives of the testator, though they might not be so entitled, according to the specific prayer, or the precise character in which they present their claims.

Their title, as personal representatives, is a conclusion of law, founded upon the statements of the bill; and it is well settled, that where facts are stated, upon which legal conclusions arise, these legal conclusions need not themselves be stated.

Where money, or personal property, whose use is its conversion into money, is either specifically given to one for life by a will, or is included in the bequest of a general residue, an investment thereof must be made by the executor, in some safe and productive fund, so as to secure the dividends to the legatee for life, and the principal after his death to the legatee, in remainder.

If the executor neglects to make such investment, and permits the legatee, for life, to consume the property, or does so himself, he will be liable therefor to the legatees in remainder.

But, if the property bequeathed, is such that its use is its consumption, the legatee for life, takes the absolute and entire interest, and the legatee over-gets nothing.

The children of a female slave, born during the continuance of the life estate, are the property of the legatee for life.

[The complainants filed their bill in this court, on the 20th of December, 1848, in which they state, that a certain William G. Jackson, of Prince Georges county, died in the year 1831, leaving a last will and testament, by which he devised his whole estate, real, personal and mixed, to his wife, Barbara Jackson, for life, and after her death to be equally divided among his children; and appointed his wife sole executrix thereof. That said Barbara renounced, in writing, the execution of said trust, and letters of administration, *cum testamento annexo*, were granted to the defendant, William N. Burch, of said county. The bill further states, that all the children of said Jackson died prior to the time of his death—except, perhaps, one Jane Jackson, who has since died intestate, and without issue; that all the said children died without leaving issue, except Araminta, who intermarried with one Richard Wootten, of Anne Arundel county, who also died in the lifetime of the said Jackson, leaving five children, the complainants and their three sisters, Jane, Araminta and Willey Maria Wootten, all now of age. That, in early life, the complainants were separated from their sisters, and do not, therefore, know where they now live, or whether all or any of them are now alive, or whether they are married or not; or, if dead or married, who are their representatives or husbands. That Barbara Jackson, the widow of the testator, died in 1843, leaving no property; and, of course, no administration was had upon her estate.

The bill, then, charges that the defendant, Burch, possessed himself of all the personal property of the testator, and returned an inventory of a part thereof, and passed accounts in the Orphans Court of Prince Georges county, by which, it appears, that on the 11th of May, 1839, there was a clear balance due the estate, after payment of all debts, of $516 01, which ought to have been paid over under the will, to the said Barbara, for

life, or safely invested by the administrator for the use of the legatee for life, and after her death to those entitled in remainder; but, that the said admininistrator refused so to pay over or invest the same, and has, under various false and fraudulent pretences, kept it in his own hands, or expended it for his own private use; and that the complainants are now entitled to an account therefor from said Burch. The bill further charges, that the testator was possessed of other personal property of great value other than that returned in the inventory, which the administrator has refused to bring into the administration of the personal estate of the testator; but, for the pupose of converting it to his own use, had removed and concealed the greater portion thereof. That, among the property thus concealed, was a large amount of cash in the form of silver and other coin, which the testator had, by industry, accumulated, the exact amount of which was not known, but amounting to not less than $500, and kept and contained in a close bag; all of which the administrator had converted to his own use and refused to account for it. That several negroes, which belonged to the testator, were also kept from the administration aforesaid, under a pretended claim asserted to them by the said Barbara, at the instance of the administrator. That the complainants have not been able to ascertain the names of all these negroes, but mention one, Maria, a female slave, with her children who had long been held and claimed by the testator. The bill then propounds special interrogatories to Burch, the administrator, touching the various charges contained in it, as to the amount of personal property of which the testator died seized and possessed, especially as to the coin in the bag, and the negroes, and what had become of the same, and prays for an account and an order of publication against the absent defendants.

The answer of Burch was filed on the 22d of March, 1849, and after admitting the death of the testator, Jackson, and the granting of letters of administration to himself, avers, "that he returned a full inventory of all the personal property of the testator, and charged himself with all the moneys due and collected, belonging to said estate, and passed a final account thereof,

on or about the 11th of May, 1839." The answer then "denies that the said William G. Jackson left any personal property of any description, except what is contained in his inventory referred to," and also states, that he, the administrator, has charged himself in his said accounts, as administrator, with all the money due the said deceased at the time of his death, that were sperate and available. The respondent, also, "utterly denies the allegations of the bill, that the testator left negro property at the time of his death," and avers his ignorance of who are the heirs at law of the testator, and requires strict proof of the same. The respondent further states, that he was induced to take upon himself the administration of said estate, on account of his relationship to the said Barbara, who was his aunt, and whom he had to support, prior to her death, out of his own private funds, the small balance due the estate not being sufficient therefor, and having been expended by him for that purpose, and insists that said Barbara took an absolute estate in all said property by virtue of the devise in the will aforesaid. The answer also denies all charges of fraud and improper conduct in the management of the estate, as charged in the bill.

To this answer, the complainants excepted, for the following reasons :

1st. That the said defendant had not answered the material allegations of the bill, and the interrogatories thereon founded, in regard to the cash in the form of coin, left by the testator, and whether the same was not kept back from the inventory, with the knowledge and consent of the defendant, and by whom and for what purposes the said cash was expended.

2d. That the defendant had not answered the similar allegations and interrogatories of the bill, in relation to the negroes, and, particularly, whether there was not a woman by the name of Maria, and whether the said slaves had not been kept from the inventory with the consent of the said Burch.

3d. That the defendant had not answered the direct interrogatories of the bill, as to the names, ages and number of said negroes, and particularly as to the increase of the said slave,

18

Maria, the names and ages of her children, and when they were severally born.

4th. That the defendant had not answered, though specially interrogated, in whose possession each of said negroes and their increase, have been, since the death of said Jackson, and by whom, and in what right, the same are and have been held.

5th. That the defendant had not answered the special interrogatories, as to the value of said negroes, at the present time, and the annual value of the services of each, since the death of said Jackson, and whether any of them have died, &c.

6th. For that the said Burch has not answered what other money and personal property, of which said Jackson died possessed, have come into his possession and knowledge.

7th. For that said answer is in other particulars insufficient.

Upon the hearing of these exceptions, the Chancellor delivered the following opinion, at the July term, 1849 :]

——

THE CHANCELLOR :

It is a well established rule of chancery pleading, that if a defendant answers, he must answer fully to all the charges of the bill ; and it is not sufficient, that the answer contains a general denial of the matters charged, but there must be an answer to the sifting inquiries, upon the general subject, and whenever there are particular and precise charges, they must be answered particularly and precisely, though the general answer may amount to a full denial of the charges.

These principles are stated almost in the identical language of Mr. Justice Story, in his treatise on Equity Pleading, sec. 852.

The answer should in general, also, be full to all the interrogatories, founded on the matters charged in the bill, unless indeed they are clearly immaterial. *Ibid, sec.* 853. And the difficulty of distinguishing, clearly, between material and immaterial interrogatories, is so considerable, that respectable writers have said, that the general rule upon the subject, requires the defendant to answer every question, without reference to whether it is or is not material, and that the court would take care,

that the rule shall not be applied in such a way as to be offensive to the parties. *See note to section* 853.

If this be the general rule, it must, of course, be taken with the qualification, that the matters inquired about, are not purely scandalous, or which would subject the defendant to a penalty, forfeiture or punishment; as in regard to all such matters, he is not required to answer.

Testing the answer of the defendant, William N. Burch, by this rule, and assuming that the charges and interrogatories of the bill, must appear to be material, it seems to me very manifest that the answer is defective.

The bill is filed by some of the representatives of William G. Jackson, deceased, against the defendant as his administrator, with the will annexed, for an account of, and settlement of his personal estate, and charges, among other things, that among the personal property of the deceased, there was a large amount of cash, in the form of silver and other coin, which he had accumulated, the exact amount of which was not known, it having been kept and contained in a close bag, and in the interrogating part of the bill, there is a precise and special interrogatory, founded upon this charge.

In reply to this charge and interrogatory, the defendant says, that letters of administration having been granted to him, he proceeded to discharge his duties, and returned a full and true inventory of all the personal property of the said testator; and charged himself, with all the moneys due and collected, belonging to said estate of the said deceased; and passed a final account, and that he has charged himself in said account, as administrator, with all moneys due the said deceased, at the time of his death, that were sperate and available.

Now, without remarking upon the words, "due and collected," and the words, "due the deceased at the time of his death," which would seem to have reference, not to cash on hand, at that time, but to moneys subsequently collected by the administrator, it is obvious, that this is not a particular and precise answer, to the particular and precise charge in the bill, and the questions founded thereupon.

The bill charges, that when the deceased died, he had in his possession a large amount of cash, in the shape of coin, contained in a bag, and the defendant is specially called upon to say, whether he did not die so possessed, and whether this money was not withheld from the inventory, &c. The answer says nothing upon the subject of coin in a bag, and is, at best, but a general answer, which, even though it may amount to a full denial of the charge, is not sufficient, as has been shown.

My opinion, therefore, is, that the complainants' first exception to the answer is well taken, and that they are entitled to a full and precise answer to the particular charges of the bill, and the interrogatories founded upon them.

What has been said upon this exception, applies, likewise, to the second exception, which has reference to the allegations and interrogatories of the bill in regard to the negro slaves.

The bill alleges, that among other property, fraudulently withheld from the inventory, there were a number of negroes, the names, &c. of whom, the complainants have not been able to ascertain; but they have learned, that a female slave called Maria, and a number of her children, who had for a long time been held, and possessed, by the deceased, as his absolute and undisputed right, were at his death, claimed, and seized by one Barbara Jackson, as her own property, that this was done at the instance, and by the influence of the defendant. And special and precise interrogatories, are propounded to the defendant, based upon these charges.

The answer to this is, that the defendant utterly denies the allegations, that the deceased left negro property at the time of his death, or any personal property, not contained in the inventory.

Now, what is this, but a general answer to particular and precise charges, which, as we have shown, will not do. The answer says nothing about the woman Maria, or her children, or the claim of Barbara Jackson, &c., nothing about negro property, held and possessed by the deceased; the denial being simply that he left any negro property, which may mean, that he left none, to which, in the judgment of the defendant, he had title.

I think, therefore, the second exception is well taken, and the remaining exceptions, being founded upon, and growing out of, the second, must also be considered as well taken, and ruled good.

[The defendant filed an additional answer on the 12th of October, 1849, containing more full and explicit denials of the charges of the bill, both in relation to the cash in the shape of coin and the negroes ; admitting that the testator died possessed of a negro slave called Maria ; but, insisting that said Jackson had no title to her, she having been loaned to his (Jackson's) wife, as a nurse, by her brother.

A commission was issued and testimony taken, and other proceedings had, which will sufficiently appear from the following opinion, delivered at the hearing upon the merits.]

THE CHANCELLOR :

The defendant, Burch, by exceptions to the averments of the bill, denies the complainants' title to relief, upon the ground, that they rest their claim solely upon the provisions of the will of William G. Jackson, and assert no title as his personal representatives. And, inasmuch as the legatees in remainder, the children of the testator, died in his lifetime, the bequest over to them, upon the death of Barbara Jackson, the widow, is supposed to have lapsed, notwithstanding the act of 1810, ch. 34, which only applies to cases in which the deceased legatee is *named* in the will. *Young* vs. *Robinson et al.*, 11 *Gill & Johns.*, 328.

The act of 1832, ch. 295, which brings within the operation of the law of 1810, all devisees and legatees, who shall be either actually and specially named in the will, or who are or shall be mentioned, described, or in any manner referred to, or designated, or identified as devisees or legatees, in and by any last will and testament, can have no influence upon this cause ; because, the will bears date, and the testator died prior to its passage.

As, therefore, the bequest over to the children of the testator upon the death of his widow, is supposed to have lapsed, they
18*

not being actually and specially named as legatees, and having died in his lifetime; and as the complainants in this case, who are the grandchildren of the testator, claim, under his will, as representing their deceased mother, it is insisted, they have no title to the aid of the court; because, they dò claim under the will, and not as the personal representative of their grandfather, under our act of assembly.

But, though the complainants do, by their bill, assert their title under the will of William G. Jackson, and claim relief accordingly, they likewise state every fact necessary to enable them to recover, as his personal representatives.

They allege, that all of his children, with, perhaps, one exception, died in the lifetime of the testator, childless and without having married, with the exception of their mother, Araminta, who had intermarried with one Richard Wootten. And, the proof shows, that all of them did so. die in the lifetime of the testator; and, that the children of the said Araminta, are the only grandchildren. These complainants, with their sisters, are, therefore, by the showing of the bill, the personal representatives of the testator, and entitled as such, to his personal estate, upon the death of his widow, the legatee for life; and, though the bill does found their title to the interposition of the court, upon the provisions of the will, it by no means follows, they can have no relief, unless they can make out their title under it. The bill states facts, showing the complainants and their sisters to be the personal representatives of their grandfather, and there is a prayer for general relief; and hence, though they may not be entitled to recover, according to the specific prayer, or the precise character in which they present their claim, there can be no objection to granting them any relief, consistent therewith, warranted by the allegations of the bill.

Now, the allegations of the bill, in this case, are such, as to entitle the complainants to relief, either under the will or as the personal representatives of their grandfather. Their title in the latter capacity is a conclusion of law, founded upon the statements of the bill; and, it is well settled, that when facts are

stated, upon which legal conclusions arise, these legal conclusions, need not themselves be stated. *Gibson et al.* vs. *McCormick,* 10 *Gill & Johns.,* 65, 108, 109.

My opinion, therefore, is, that upon this bill, the complainants are entitled to relief, as the personal representatives of the testator ; provided, the proof in the cause, and the principles of law, applicable thereto, will warrant it.

The testator, by his will, gave to his wife, Barbara Jackson, his whole estate, real, personal and mixed, for and during her life ; and at her death, to be equally divided among his children, and appointed his wife his executrix. She renounced her right to administer, and letters, *cum testamento annexo,* were granted to the defendant, Burch, who took upon himself the execution of the trust ; and, the first question touching the extent of the complainants' title to recover, is, how far the bequest to the widow for life, vested in her the absolute right to the property which it is conceded the testator left.

It is no longer an open question in this state, that when money, or personal property, whose use is the conversion into money, is either specifically given to one, for life, by a will, or is included in the bequest of a general residue, an investment thereof must be made by the executor, in some safe and productive fund, so as to secure the dividends to the legatee for life, and the principal after his death, to the legatee in remainder. *Evans et al.* vs. *Iglehart et al.,* 6 *Gill & Johns.,* 172. "If," say the Court of Appeals, in the case referred to, "the surplus or residue thus bequeathed, consists of money or property, whose use is the conversion into money, and which it could not, for that reason, be intended, should be specifically enjoyed, nor consumed in the use, but be by the executor converted into money, for the benefit of the estate, an investment thereof must be made," &c.

But if, on the contrary, the property bequeathed is such, that its use is its consumption, the legatee for life, takes the absolute and entire interest, and the legatee overgets nothing.

In this case, my opinion is, that the articles embraced in the inventory, and accounts returned by the defendant, Burch, ex-

cept the money and *choses in action* were of that perishable nature, that their use necessarily involved their consumption; and, therefore, the legatee for life took the absolute property in them.

But, with regard to the money, or *choses in action*, which have been converted into money, the rule is different, and it was the duty of the defendant to have made an investment thereof; and that, if he has not done so, but has permitted the legatee for life to consume them, or has done so himself, he is liable to these complainants and their sisters, and the case must go to the Auditor, to take the necessary account. I am also of opinion, that there is evidence to show that the testator did leave certain sums of money in coin, which the defendant omitted to include in the inventory; and the Auditor will be directed to charge him, in respect thereof, with such an amount as may be justified by the proof.

The proof, in reference to the negro slaves is, to some extent, contradictory; but, upon a careful examination of it, I am of opinion, that the weight of evidence is in favor of the title of the testator; and, therefore, the Auditor will be instructed to charge the defendant, Burch, with the value of the woman Eliza and her services, and, also, with the value of the services of Maria, from the period of the death of Barbara Jackson, in 1843, to the death of Maria, in 1843. The children born during the life of the legatee for life, are her property; and, of course, with regard to them there can be no recovery in this case.

It is, thereupon, ordered, this 12th day of May, in the year 1851, that this case be, and the same is hereby, referred to the Auditor, with directions to state an account, or accounts, in conformity with the preceding opinion, from the pleadings and proofs now in the cause, and such further proofs, if any, as the parties may lay before them.

———

BRICE T. B. WORTHINGTON for Complainants.
CLARK C. MAGRUDER for Defendants.