[File No. 6220.]

IN THE MATTER OF THE ESTATE OF WILLIAM GIESE, Deceased.

MARGARET TICE, William Giese, Emil Giese, Emilia Giese, Marie Kughn, Dorothy Giese, as an Individual, and William Giese, Jr., Clarence Giese, and Raymond Giese, Minors, and Dorothy Giese as Special Guardian of said Minors, Appellants, v. JERRY ZLEVOR, as Executor of the Last Will of William Giese, Deceased and National Surety Company, a Foreign Corporation, Respondents.

(255 N. W. 474.)

Opinion filed May 31, 1934.

*George A. McGee* and *Harry E. Dickinson,* for appellants.

*B: H. Bradford* and *F. B. Lambert,* for respondents.

Burke, J. This is a proceeding for the removal of an executor and the facts are the same as in the case of Zlevor v. Tice, just decided [ante, 626, 255 N. W. 470]. The petition for the removal of the executor alleges all of the grounds of objection to the executor's report, alleging in substance that the acts of the executor were wrongful and conducive to waste of the estate or affording opportunity therefor, that being grounds for removal under subd. 2 of § 8698, Compiled Laws 1913.

The county court, after a hearing, made findings of fact and conclusions of law upon which judgment was entered removing the executor and from the judgment the executor appealed to the district court.

The matter came on for hearing in the district court before Hon. Geo. H. Moellring, district judge, on the 12th day of January, 1933, and after a trial on the merits, findings of fact and conclusions of law were filed and from a judgment thereon the petitioners appeal.

The court finds as facts in substance that under the terms of the will it was necessary to invest the money belonging to the estate for the support of the surviving wife during her lifetime; that the question of investments was thoroughly talked over between the executor, the attorney employed by the heirs and the court. The attorney so employed prepared and presented to the executor a petition for authority to invest such funds; that with respect to said loans the same were first mortgages upon the land described therein and said security is reasonably worth from three to five times the amount of said loan and interest in each case, even at present values of real estate, and

were worth more at the time the loans were made; that said loans were made with the personal knowledge and consent of the judge of the county court; that all payments for the support of Mrs. Giese at the rate of $100 per month, as ordered by the court, have been promptly made, and that she has been paid several months in advance, on stipulation of the parties approved by an order of this court, under an agreement that such payment shall not be considered as an acquiescence for taking the benefit of any decree made in this probating; that none of the funds coming into the hands of the executor have been in any way lost or lessened since his appointment; and that good judgment has been exercised by Zlevor in the investment of funds; and that no act that he has done has been performed by him without obtaining an order from the court directing and approving his proposed conduct, and that all such investments were made upon the advice and approval of Mr. Coyle. Neither has said executor violated any of the orders of the court given relative to the investment of funds, or otherwise.

Upon the findings the court made conclusions of law as follows: "That the petitioners have failed to prove any facts warranting the removal of the defendant Jerry Zlevor as executor of the last will of William Giese, deceased; and that the defendants are entitled to an order of this Court, directing the entry of judgment in the County Court of Ward County, North Dakota, as follows—: (a) Denying the prayer of the petitioners for the removal of the executor; (b) for removal of the First National Bank and Trust Company as executor; (c) the reinstating of Jerry Zlevor as executor of the last will of William Giese, deceased; (d) that before continuing to exercise authority as executor, said Zlevor shall present proof to the county court that said National Surety Company is solvent and reasonably capable of carrying out any future liabilities that might occur as surety on the executor's bond, or to present to the County Court a new bond for such future liabilities, if any; all of which said matters with reference to said executor's bond to be determined by the County Court in its sound discretion, and said County Court to determine the sufficiency of such bond; (e) an accounting of the First National Bank and Trust Company, of Minot, North Dakota, to said Zlevor, as executor, of all things done or attempted to be done by it during its administration."

We have carefully examined the record and are of the opinion that

the findings of fact and conclusions of law of the trial judge in removal proceedings are fully sustained by the record. The loans complained of were made with the assistance of the county judge, the attorney for the estate and by virtue of written orders made and entered in the county court by the county judge. Before making the loans the executor, like any prudent man, personally investigated the lands given as security. Before any money was paid on any loan the executor insisted and required the payment of all taxes. On the petition for an order to invest funds the judge of the county court made its order that "Jerry Zlevor, as executor be and he is hereby ordered and authorized to invest such funds in only mortgages on farm properties in the State of North Dakota, bearing interest at not less than 6%."

The judge who made this order has been judge of the county court of Ward County for more than thirty years. He was one of the very early pioneers in the settlement of the county in which he has lived for about a half a century. He was there in the beginning and has seen and watched the growth and development. He knows the country and is thoroughly familiar with real estate values and after consideration he authorized the executor to loan the funds on real estate. "A first mortgage on real estate security is usually considered as a proper investment for the funds of an estate." 11 R. C. L. 146; Gray v. Fox, 1 N. J. Eq. 259, 22 Am. Dec. 508; Corcoran v. Kostrometinoff (C. C. A. 9th) 164 F. 685, 21 L.R.A.(N.S.) 399.

The loans were made on security which one district judge finds is at least twice the value of the loan in each case and another district judge finds is from three to five time the value. All the evidence in the record supports the statement of the trial judge that the security is from three to five times the value of the loan. According to the terms of the will it was the duty of the executor to keep the funds invested during the life of the survivor and according to the record the investments made were for the best interest of the estate.

If the executor allowed a larger attorney fee than the attorney was entitled to, under his contract, there is nothing to show that he knew anything about the contract that Margaret Tice made with the attorney and the attorney fees which he allowed were not excessive in an estate valued at fifteen thousand dollars. The executor was advised by the attorney for the estate that he was entitled to his fees and commissions

as represented in the accounting filed and he would have been entitled to such fees if it had been a final accounting. The matter of the attorney fee and the fees of the executor were not settled until approved by the county court. The allowance of the attorney fee and the claim for commissions were made in good faith on the part of the executor and have been modified and settled by the county court.

The county judge was a witness in the trial in the district court and he frankly states that he told Mr. Kane, guardian, that he could make a loan from Mr. Zlevor and Mr. Kane testified that the matter was all talked over and arranged with the county judge and Mr. Coyle before they broached the subject to the executor. The county judge further testified that in his opinion it was a safe investment.

"Q. Has there been anything to indicate, to the court of the conduct of Mr. Zlevor in your court, or in connection with this case, which indicates to you that he hasn't acted in highest good faith at all times?

"A. I Think Mr. Zlevor acted in the best and good faith all the time.· . . .

"Q. The Court: Well, have you seen any indications of bad faith on Mr. Zlevor's part?

"A. No, sir."

Then on cross examination:

"Q. Judge, you did remove Mr. Zlevor as executor of this estate, did you not?

"A. Yes, because he wanted to get clear of it, and all the heirs-at-law was jumping on me about it; and in fact I advised him to resign, and I made an order removing him, but these matters now coming up it hasn't been effected yet. . . .

"Q. And at the time you made that order you felt it was the best thing for the interests of the estate, and of Mr. Zlevor, to remove him and appoint the trust company?

"A. Well the reason I did that, I considered there was so much dissatisfaction with the heirs at law of having Mr. Coyle attorney, and Mr. Zlevor administrator, and it was more upon that than anything else that I made an order removing, and advising Jerry to resign. It was from the dissatisfaction amongst the heirs."

The county judge had told the heirs that the estate would be settled

in six months. At the end of six months William Giese went to Mr. Coyle's office and asked him why he was continuing the administration when the time was up. It was explained to him that the estate could not be settled while his mother lived. The heirs then employed other attorneys and these proceedings were begun.

On re-direct examination:

"Q. But, Judge, you didn't find, and you don't know of any wrongful act on the part of Jerry Zlevor? A. Oh, no, no."

On re-cross examination:

"Q. Aside, Judge, from the making of these loans, which you held were not made according to law. A. That is what I held. I considered it should have been a party in interest that should have applied.

"Q. And you so held, and that was afterwards affirmed by Judge Lowe?

"A. Yes. But now I want to qualify my—nothing against Mr. Zlevor that I made that order."

There is in the record enough to question the solvency of the surety company that executed and signed as surety the bond of the executor as stated in the conclusions of law of the trial judge which conclusions and the judgment entered thereon require the executor to show to the satisfaction of the county court the sufficiency of said bond or to furnish a new bond to be approved by the county court.

The judgment of the trial court in the removal proceedings is in all things affirmed with costs. The case is remanded to the district court with instructions to remand the same to the county court with instructions to have judgment entered in the county court in accordance herewith.

BURR, Ch. J. and NUESSLE and CHRISTIANSON, JJ., and HOLT, Dist. J. concur.

MOELLRING, J., being disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of First Judicial District, sitting in his stead.